## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ZOLOFT (SERTRALINE HYDROCHLORIDE) PRODUCTS LIABILITY LITIGATION | : | MDL NO. 2342<br>12-MD-2342 |
| | : | HON. CYNTHIA M. RUFE |
| THIS DOCUMENT APPLIES TO: | : | CIVIL ACTION |
| *Bailey,* et al. *v. Pfizer, Inc.,* et al. | : | No. 12-211 |
| *Gordon,* et al. *v. Pfizer, Inc.,* et al. | : | No. 12-229 |
| *Kiah,* et al. *v. Pfizer, Inc.,* et al. | : | No. 12-253 |
| *Balvanz,* et al. *v. Pfizer, Inc.,* et al. | : | No. 12-925 |

### MEMORANDUM OPINION

**Rufe, J.**                                                                    **May 29, 2014**

### I.    INTRODUCTION

Plaintiffs have moved to remand these cases, which were filed in Pennsylvania state court, and then removed and transferred to the Zoloft Multi-District Litigation.  The lawsuits were filed against Pfizer, Inc., the manufacturer of Zoloft, and Wolters Kluwer Health, Inc. and Wolters Kluwer United States Inc. (collectively, the "WK Defendants"), which Plaintiffs allege authored and supplied patient education monographs ("PEMs") containing information and warnings about the use of Zoloft that Plaintiffs received from their pharmacists with their Zoloft prescriptions.  Plaintiffs argue that because at least one of the WK Defendants is a citizen of Pennsylvania,[1] the case was improperly removed in violation of the forum defendant rule.[2] Defendants argue that because Plaintiffs cannot state a claim against the WK Defendants, both

---

[1] All parties agree that Wolters Kluwer Health is a citizen of Pennsylvania; the status of Wolters Kluwer United States is disputed but irrelevant to the disposition of the motions.

[2] "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

because they owed no duty to Plaintiffs and because the First Amendment bars the claims against them, the WK Defendants have been fraudulently joined and their citizenship should be disregarded in determining diversity jurisdiction.

## II.    LEGAL STANDARD

Removal of a civil action from state to federal court is proper only if the action initially could have been brought in federal court.  The removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand."[3]  The party removing the case has the burden to prove that federal jurisdiction is proper at all stages of the litigation.

"The doctrine of fraudulent joinder prevents a plaintiff from joining a non-diverse defendant 'with no real connection to the controversy' to defeat federal removal jurisdiction."[4] Because the "right of removal cannot be defeated by a fraudulent joinder of a resident defendant," a district court may disregard the citizenship of any fraudulently joined defendant when assessing the propriety of removal premised on diversity jurisdiction.[5]

A district court may base a finding of fraudulent joinder on factual or legal grounds. Under the test established by the Court of Appeals for the Third Circuit, such a finding is appropriate "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the

---

[3] *Boyer v. Snap-On Tools Corp.,* 913 F.2d 108, 111 (3d Cir. 1990).  28 U.S.C. § 1331 grants federal district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1332 provides that the federal courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

[4] *In re Fosamax Prods. Liability Litig.*, MDL No. 1789, 2008 WL 2940560, at *3 (S.D.N.Y. July 29, 2008) (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 4601-61 (2d Cir. 1998)).

[5] *In re Diet Drugs Litig.*, 294 F. Supp. 2d 667, 672 (E.D. Pa. 2003).

2

defendant or seek a joint judgment."[6] To assess the quality of a claim in these regards, a district court must look to the requirements of state law. A claim is colorable if it is not "wholly insubstantial and frivolous" in light of the relevant law.[7] With respect to a claim's factual basis, a "limited piercing of the allegations to discover fraudulent joinder" may be appropriate.[8] The limitation is significant, however, with the permissible inquiry being less probing than the review a district court conducts in deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[9]

The heavy burden of demonstrating that a defendant was fraudulently joined rests with the defendant making the charge.[10] When evaluating a charge of fraudulent joinder, "[a] district court must resolve all contested issues of substantive fact . . . and . . . any uncertainties as to the current state of controlling substantive law in favor of the plaintiff."[11] Moreover, "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court."[12]

---

[6] *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985) (quotation omitted). There is no evidence before the Court at this time that Plaintiffs do not intend to prosecute the claims against the WK Defendants. *Compare In re: Avandia Mktg., Sales Pracs., and Prods. Liab. Litig.*, No. 07-md-1871, 2014 WL 2011597, at *3 (E.D. Pa. May 15, 2014).

[7] *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992).

[8] *Boyer*, 913 F.2d at 112.

[9] *Batoff*, 977 F.2d at 852.

[10] *Boyer*, 913 F.2d at 111.

[11] *Id.*

[12] *Id.* (quoting *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440-41 (11th Cir. 1983)).

## III.    DISCUSSION

### *State Tort Law*

Pfizer argues that the claims against the WK Defendants are not viable under applicable state laws because no duty to Plaintiffs arose from the issuance of the PEMs.[13]  According to the allegations of the Complaints, the WK Defendants author PEMs, which are intended to be distributed by the pharmacy to the patient along with the drug in question, in this case, Zoloft. Unlike the written materials prepared by the drug manufacturer to accompany the drug, which are directed to the prescribing doctors, the content of the PEMs is not reviewed or approved by the Food and Drug Administration.  Plaintiffs allege that the PEMs failed to include key drug information that Plaintiffs contend shows an association between drugs of Zoloft's class and birth defects. In essence, Plaintiffs allege that the WK Defendants authored and distributed materially misleading PEMs on the risks of Zoloft use, and that it was foreseeable that the users of Zoloft would rely upon the information provided directly or through pharmacies to patients with the prescription.

Two sections of the Restatement (Second) of Torts ("Restatement") set forth a possible basis for liability against the WK Defendants.  Section 323 of the Restatement provides that:

---

[13] In addition to Pennsylvania, the potentially relevant state laws are New Mexico (*Bailey*); Illinois (*Balvanz*); South Carolina (*Gordon*); and Wisconsin (*Kiah*). Federal courts apply the choice of law rules of the state where they sit, and "Pennsylvania applies a flexible rule which permits analysis of the policies and interests underlying the particular issue before the court and directs courts to apply the law of the state with the most interest in the problem." *Specialty Surfaces Int'l v. Cont'l Cas. Co.,* 609 F.3d 223, 229 (3d Cir. 2010) (internal quotation marks omitted). In personal injury cases, that is usually the state where the injury occurred. *See, e.g., Flamer v. New Jersey Transit Bus Operations, Inc.,* 607 A.2d 260, 264 (Pa. Super. Ct. 1992).  This Court has held in the context of the Avandia MDL that cases directly filed into the MDL would be treated as if they had been filed in the Plaintiffs' home states. *See In re: Avandia Mktg., Sales Pracs. and Prods. Liab. Litig.*. No. 07-md-1871, 2012 WL 3205620, at * 2 (E.D. Pa. Aug. 7, 2012).  This Court has not ruled, however, on the choice of law when an action is filed in Pennsylvania state court by non-residents of Pennsylvania.

4

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.[14]

Section 324A of the Restatement provides that:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.[15]

Having considered the relevant state law, and because the scope of the WK Defendants' undertaking and the accuracy of the information in the PEMs is not properly determined in the context of a motion to remand, the Court cannot conclude that there is no colorable basis for

---

[14] Section 323 is recognized by the courts in Pennsylvania, *Wilson v. PECO Energy Co.*, 61 A.3d 229, 232 (Pa. Super. Ct. 2012); Illinois, *Bell v. Hutsell*, 955 N.Ed. 2d 1099 (Ill. 2011); New Mexico, *Couch v. Astec Indus., Inc.*, 53 P.3d 398, 410 (N.M. App. Ct. 2002); South Carolina, *Johnson v. Robert F. Lee Academy, Inc.*, 737 S.E.2d 512, 514 & n.5 (S.C. App. Ct. 2012); and Wisconsin, *Hatleberg v. Norwest Bank Wisconsin*, 700 N.W. 2d 15, 23 (Wis. 2005).

[15] Section 324A is recognized in Pennsylvania, *Matharu v. Muir,* 86 A.3d 250 (Pa. Super. Ct. 2014); Wisconsin, *Miller v. Bristol-Myers Co.*, 485 N.W.2d 31 (Wis. 1992); and Illinois, *Bell*, 955 N.Ed. 2d 1099. In *Blake v. Public Service Company of New Mexico*, 82 P.3d 960, 967 (N.M. App. Ct. 2003), the New Mexico court declined to adopt Section 324A in holding that an electric utility company's contract with the city to provide streetlights did not create a duty to the public, such that a pedestrian struck at an intersection where the streetlight had been removed could not sue the utility. The court considered the context of the provision of services for the common benefit, and also drew a distinction between "launching an instrument of harm and simply failing to be an instrument of good." *Id.* at 964. This Court cannot conclude that New Mexico courts would not view the voluntary issuance of the PEMs, if they were found to be dangerously misleading, as "launching an instrument of harm."

liability against the WK Defendants.[16]  The Court also cannot determine that the claims would be

barred in those states that have adopted the learned intermediary doctrine. "Under the learned

intermediary doctrine, the drug manufacturer owes a duty of disclosure to the prescribing

physician, but it is then the duty of the prescribing physician to communicate any risks or other

information about the drug to the patient."[17]  The learned intermediary doctrine does not,

however, necessarily preclude claims against a non-manufacturer who voluntarily undertakes to

communicate risks and other information to patients.[18]

### *First Amendment*

Pfizer also argues that the claims against the WK Defendants are barred because the

PEMs constitute truthful and noncommercial protected speech that cannot give rise to civil

liability.  With regard to this argument, the Court agrees with other courts that have held that the

question of the applicability of the First Amendment as a defense to Plaintiffs' claims cannot be

appropriately determined in the context of a motion to remand, in the absence of any developed

---

[16] The Pennsylvania trial court's decision in *Banks v. Ortho-McNeil-Janssen Pharms.*, No. 1001618, 2013 WL 2321107 (Phila. C.C.P. Apr. 5, 2013), is not to the contrary.  In that case, the drug manufacturer contracted with a medical communications company "to assist in developing medical literature for [the drug], including articles published in peer-reviewed journals and posters and abstracts presented at medical conferences." *Id.* at 1. At summary judgment, the court held that the evidence showed that the manufacturer "maintained absolute control" over the scope of the communication company's services and exercised final review and approval of the substance and content of any publication. *Id.* at *9.  Therefore, the court found that the communications company was not the "gatekeeper" of the publication and distribution of information related to Risperdal. *Id.* Although discovery in these case may reveal that Pfizer exercised similar control over the PEMs, the Complaints allege that the WK Defendants were responsible for authoring and distributing the PEMs, and that they contracted with pharmacies to provide information directly to patients, rather than to medical professionals as in *Banks*.

[17] *Zafarana v. Pfizer, Inc.*, 724 F. Supp. 2d 545, 558 (E.D. Pa. 2010).

[18] For example, under Illinois law, a pharmacist is under no initial duty to warn of any dangerous side effects of a prescription drug, but once the pharmacist voluntarily undertakes to do so, liability may be found if the pharmacist acted negligently. *Frye v. Medicare-Glaser Corp.*, 605 N.E. 2d 557, 559-60 (Ill. 1992). Pfizer notes correctly that the *Frye* court did not require the pharmacist to warn of all potential side effects after warning of one, but that court also held that the information conveyed could not be inaccurate or misleading.

factual record.[19]

### *Bankruptcy*

Finally, Pfizer argues that there is an independent basis for federal jurisdiction in the *Balvanz* case, as one of the Plaintiffs filed a bankruptcy petition. However, the Court need not decide whether removal would be appropriate under such circumstances as in this case, the debtor has been granted a discharge and the bankruptcy case has been closed, and therefore no decision in this case can affect a bankruptcy estate.[20]

## IV.    CONCLUSION

Pfizer has not met its heavy burden of establishing that Plaintiffs' claims against the WK Defendants for voluntarily undertaking to provide information about the use of Zoloft directly to patients through pharmacy inserts are not colorable, such that joinder of the WK Defendants was fraudulent. The motions to remand will be granted. An order will be entered.

---

[19] *Robinson v. Wolters Kluwer Health, Inc.*, No. 11-5702, 2011 WL 6009980 (E.D. Pa. Dec. 2, 2011). *Accord Neeley v. Wolters Kluwer Health, Inc.*, No. 11-325, 2013 WL 3929059, at * 14 (E.D. Mo. July 30, 2013). The cases relied upon by Pfizer arose in a different context. *See, e.g., Rivera v. First Data Bank*, 115 Cal. Rptr. 3d 1, 8 (Cal. Ct. App. 2010) (holding, in the context of an anti-SLAPP suit, that the plaintiffs had failed to demonstrate a duty by the publisher).

[20] *In re Balvanz*, No. 11-73110, Doc. No. 20 (Bankr. C.D. Ill.).